IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In re:<br><br>JAMES EDWARD MCCONNELL,<br><br>Debtor.<br>____________________________<br><br>NEIL C. GORDON, Chapter 7 Trustee for the Estate of James Edward McConnell,<br><br>Appellant,<br><br>v.<br><br>JAMES EDWARD MCCONNELL; NANCY J. GARGULA,<br><br>Appellees. | : | CIVIL ACTION NO.<br>1:21-cv-304-AT<br><br>BANKR. CASE NO.<br>19-67128-PWB |

**ORDER**

This matter is currently before the Court on Appellant Neil C. Gordon's appeal of the bankruptcy court's January 4, 2021 order (Appeal Doc. 1-2)[1] ("the Bankruptcy Order"). In that order, the bankruptcy court rejected significant portions of Appellant and his law firm's requested compensation for legal services to a Chapter 7 bankruptcy estate in which Appellant was the trustee. For

[1] For purposes of this Order, docket entries in this appeal will be referred to with the notation "Appeal Doc.," and docket entries in the underlying bankruptcy court case will be referred to with the notation "Bankr. Doc."

the reasons that follow, the Bankruptcy Order is **AFFIRMED IN PART** and **REVERSED IN PART**.

## I. Background

### A. The Debtor's Chapter 7 Bankruptcy Case

James Edward McConnell ("the Debtor") filed a Chapter 7 bankruptcy petition on October 28, 2019. (Bankr. Doc. 1 at 61.) In his Chapter 7 schedules, he listed a property located at 1369 High Point Ave. SW, Atlanta, GA 30315 with a stated value of $117,692. (*Id.* at 15.) The property was subject to three secured claims: a $31,657 claim from Discover Home Equity Loans, a $73,634 claim from Wells Fargo Home Mortgage, and a $275 claim from HMS Association Management. (*Id.* at 23–24.) In total, the Debtor had $108,733 in secured debt and $20,807 in unsecured debt for a total of $129,540 in liabilities. (*Id.* at 40.) The Debtor listed a total monthly income of $2,988 and total monthly expenditures of $2,988, meaning that he had no net income. (*Id.* at 35, 37). However, he selected a box marked "Retain the Property and enter into a *Reaffirmation Agreement*," indicating that he intended to retain his home. (*Id.* at 38.)

The commencement of the case led to the creation of a bankruptcy estate under 11 U.S.C. § 541(a), and Appellant Neil C. Gordon of the law firm Arnall, Golden & Gregory, LLP ("the firm") was appointed as the Trustee for the Chapter 7 bankruptcy estate. (Bankr. Doc. 6 at 1.) According to time entries from the

firm, Appellant presided at a meeting of creditors on December 2, 2019. (Bankr. Doc. 56 at 8.) A week later, Appellant filed an application seeking the bankruptcy court's permission to hire his own law firm to perform legal services for the bankruptcy estate. (Bankr. Doc. 20.)

In the application, Appellant stated that his firm had already begun performing "certain professional services" for the estate "[i]n order to expedite the marshalling of the Estate's assets." (*Id.* at 4.) The firm's time records indicate that at that point Appellant had billed time for tasks such as reviewing documents and drafting a "legal work action memo," and other members of the firm had billed time for tasks such as requesting a title examination, preparing a notice of interest in real estate for purposes of 11 U.S.C. § 549(c), and researching tax records and deed indexes for liens and undisclosed properties. (Bankr. Doc. 56 at 11.)

In the application, Appellant stated,

> Professional services for which counsel for the Trustee are necessary in this Case relate to the accounting for and investigation and recovery of assets to be administered for the benefit of the bankruptcy estate of the Debtor (the "**Estate**"), including but not limited to that certain real property known generally as 1369 High Point Avenue, SW, Atlanta, Fulton County, Georgia 30315.

(Bankr. Doc. 20 at 2.) Specifically, he represented,

> Counsel will be needed for any (a) objection to any (i) motion to convert Case or (ii) motion to dismiss Case; (b) preparation of demand letters; (c) settlement negotiations; (d) legal research; (e) preparing, filing and prosecution of any (i) adversary proceeding (ii)

> motion to compel, (iii) motion for turnover, (iv) motion to settle, (v) motion to sell, (vi) claim objection, (vii) objection to exemptions, and (viii) other objections; and (f) other necessary services.

(*Id.*) He added,

> The professional services, which may be rendered for which it is necessary that an attorney act may also include:
>
> (a) Preparation of pleadings and motions and conducting of examinations incidental to the administration of the Estate;
> (b) Services incidental to preservation and disposition of assets;
> (c) Investigation, analysis, and appropriate action, if required, relative to any preference, fraudulent transfer, unperfected security interest, improper disposal of assets, prosecution of the Estate's claims, or pending litigation;
> (d) Any and all other necessary action incident to the proper preservation and administration of the Estate.

(*Id.* at 3.) Appellant also represented that it "will be in the best interest of the Estate" for Appellant himself to act as the attorney performing these legal services because he was already familiar with the case and, as a consequence, "the trouble, expense, and delay inherent in acquainting and counseling other attorneys regarding operative facts may thus be avoided." (*Id.*)

The bankruptcy court granted Appellant's application on the same day that it was filed, subject to any objection by the United States Trustee.[2] (Bankr. Doc. 21.) In its order, the bankruptcy court stated that in connection with the legal services performed for the estate, "compensation shall be paid to AGG upon

[2] The United States Trustee did not object.

notice, hearing, and approval of the Court pursuant to 11 U.S.C. §§ 330, 331 and Bankruptcy Rule 2016 of an appropriately detailed application." (*Id.* at 2.)

On January 8, 2020, Appellant filed an application to employ a real estate agent to assist with selling the property. (Bankr. Doc. 26.) In that application, Appellant stated,

> Based on Trustee's independent investigation of value and a real estate Broker's inspection, evaluation and comparative marketing analysis value of the Property, Trustee has determined that the value of the Property would support a listing price of $215,000.00. Thus, there is significant equity in the Property of approximately $84,000.00 to benefit the Estate if the Property were sold by Trustee.

(*Id.* at 3.) The proposed listing agreement included a list of "Special Stipulations" that had been drafted by the Appellant, including that Appellant was acting as the 'Seller" of the property, that the Appellant was selling the property as is and made no warranties as to the condition of the property, and that the terms of the sale were subject to court approval. (*Id.* at 12.) Appellant requested authority from the bankruptcy court to employ a real estate agent to sell the property with a listing price of $215,000 consistent with the terms contained in the proposed listing agreement. (*Id.* at 3.) The record does not indicate that the Appellant's request was ever granted.

### B. The Debtor's Conversion Motion

On January 22, 2020, the Debtor filed a motion to convert his Chapter 7 case to a Chapter 13 case.[3] (Bankr. Doc. 30.) The Debtor also scheduled a hearing on his motion for February 25, 2020 pursuant to the bankruptcy court's self-calendaring procedures. (*Id.* at 2.) Appellant responded by filing an opposition to the Debtor's conversion motion on February 11, 2020. (Bankr. Doc. 38.)

In his opposition, Appellant argued that the Debtor's motion should be denied on the grounds that the Debtor had no disposable income that could be used to establish a repayment plan for a Chapter 13 case and that the motion was a bad faith effort to thwart Appellant's sale of his home. (*Id.* at 4–5.) Appellant contended that the timing of the motion clearly established the bad faith motive. (*Id.* at 8–9.) He explained that on January 15, 2020 he had offered to "settle" with the Debtor by requiring the Debtor to pay the equivalent of the nonexempt equity in the home to avoid a sale of the home, and that instead of responding to that settlement offer the Debtor moved to convert the case to a Chapter 13 case so that he could keep his home. (*Id.* at 4.) Based on this sequence of events, Appellant argued, "Debtor is not seeking a conversion of his Bankruptcy Case in a

[3] Unlike Chapter 7 of the Bankruptcy Code, Chapter 13 "authorizes an individual with regular income to obtain a discharge after the successful completion of a payment plan approved by the bankruptcy court." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007). And unlike in a Chapter 7 case where "the debtor's nonexempt assets are controlled by the bankruptcy trustee," in a Chapter 13 case "the debtor retains possession of his property." *Id.*

good faith effort to pay his creditors, but in an effort to not pay them in direct response to Trustee's interest shown in the Property." (*Id.* at 5.)

After Appellant filed his opposition Appellant engaged in settlement negotiations with the Debtor's attorney for several months, as evidenced by his firm's billing records. (Bankr. Doc. 56 at 12–14.) Then, on May 14, 2020, while his conversion motion was still pending, the Debtor filed an amendment to his Chapter 7 schedules. (Bankr. Doc. 46.) In the amended schedules, the Debtor added $500 of monthly income from rent that he had started receiving from a roommate, which brought his total monthly income to $3,488. (*Id.* at 11.) The Debtor also reduced his monthly expenses to $2,588, bringing his net monthly income to $900. (*Id.* at 13.)

Around the same time, the Debtor proffered a proposed Chapter 13 repayment plan under which he would make $900 in monthly payments to the Appellant for a period of 60 months. (Bankr. Doc. 47. at 2.) Under the terms of the plan, unsecured creditors would receive 100% of the total amount of their claims. (*Id.* at 6–7.) The Debtor's attorney served Appellant with the proposed plan on May 21, 2021. (*Id.* at 9.)

Less than a week later, Appellant withdrew his objection to the conversion motion and filed a consent order requesting that the bankruptcy grant the Debtor's motion, which the bankruptcy court granted. (Bankr. Doc. 48.) Under the terms of the consent order, the Chapter 7 case would be converted to a

Chapter 13 case on the condition that it would be reconverted to a Chapter 7 case — with Appellant as the Trustee — if either (a) the Debtor failed to obtain confirmation for his pay plan or comply with the terms of that plan, or (b) the Chapter 13 Trustee or another party in interest sought dismissal of the case. (*Id.* at 2.) The consent order also stated "that the Chapter 7 Trustee, his counsel, or any other party entitled to compensation may file an application for compensation and reimbursement of expenses," and directed Appellant to turn over the $1,624 he had recovered for the estate to the Chapter 13 Trustee. (*Id.*)

**C. Appellant's Fee Application**

Shortly after the bankruptcy court entered the consent order, Appellant submitted a fee application seeking compensation for fees and expenses incurred between October 28, 2019 and May 26, 2020 — the date of the consent order. (Bankr. Doc. 56.) In the fee application, Appellant claimed that he and his firm had performed 38.1 hours of legal work at a blended rate of $399.45 per hour. (*Id.* at 2.) As compensation for that work, Appellant requested $1,915 for himself and $13,304 for the firm. (*Id.* at 4.) After applying a 2.8% voluntary reduction to the legal fees, and adding in $210.80 in costs and administrative expenses, Appellant's total request came out to $15,000. (*Id.* at 6–7); (Bankr. Doc. 66 at 2).

No party in interest objected to Appellant's fee application. However, citing its independent obligation to review trustees' fee applications under 11 U.S.C. § 330(a)(2), the bankruptcy court issued an order on August 18, 2020

notifying the parties of its intent to schedule a hearing on the fee application "to address the Court's concerns." (Bankr. Doc. 66 at 2.) In its order, the bankruptcy court questioned whether Appellant truly required legal assistance to perform his duties in administering the bankruptcy estate, and whether those services should ultimately be treated as compensable professional services under 11 U.S.C. § 330(a)(1). (*Id.* at 9–10.) The court opined, "It takes no particular legal expertise to employ a real estate agent, sell a residence, object to claims if appropriate, and distribute the money." (*Id.* at 9.) The court added, "in the absence of a controversy regarding any of these matters, the Court questions whether a bankruptcy trustee – presumably well-versed in bankruptcy law and procedure – even requires legal assistance to accomplish these tasks." (*Id.*)

The bankruptcy court held a hearing to address the fee application on October 1, 2020. Later that day, Appellant filed a supplement to the fee application. (Bankr. Doc. 71.) In that filing, Appellant offered to reduce his request for compensation from $15,000 to $10,000. (*Id.* at 2.)

On January 4, 2021, the bankruptcy court issued a 58-page order denying Appellant's requested compensation in principal part, including all of the requested legal expenses. (Bankruptcy Order at 58.) In denying the majority of Appellant's fee request, the bankruptcy court expressed that its two main concerns were that the services at issue did not actually qualify as trustee work, meaning they were not compensable as legal services, and that, to the extent any

of the work Appellant and his firm performed actually qualified as legal services, those services still were not compensable because they were not necessary and beneficial to the estate. (*Id.* at 19.) Consequently, instead of granting Appellant and the firm the requested $15,000 in compensation for legal and administrative expenses, the bankruptcy court determined that Appellant should be limited to a $406 commission on the disbursements he secured for the estate in the course of his work as the trustee, and that the firm's compensation should be limited to $210.50 in administrative costs. (*Id.* at 58.) Two weeks later, Appellant filed a notice of appeal. (Appeal Doc. 1-1.)

## II. Issues on Appeal

Appellant raises eleven issues in his brief on appeal. However, by Appellant's own admission, these eleven issues can be distilled into three general grounds for error: that the bankruptcy court erroneously concluded

1. that the firm be denied compensation for services that were the performance of the Trustee's statutory duties;

2. that the firm's services in opposing conversion to chapter 13 are not allowable because they were not necessary or beneficial to the estate; and

3. that the firm should be denied compensation for services in connection with Appellant's retention of the firm and its application for compensation.

(Appellant's Br., Doc. 15 at 20.)

## III. Standard of Review

"In an appeal of a Bankruptcy Court decision, the district court sits as an appellate court of review." *Arnall Golden Gregory LLP v. Stroud*, No. 1:18-cv-3755, 2019 WL 12529177, at *2 (N.D. GA. Jan. 28, 2019) (citing *In re Nica Holdings, Inc.*, 810 F.3d 781, 785–86 (11th Cir. 2015)). "In its appellate capacity, a district court may 'affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'" *Id.* (quoting Fed. R. Bankr. P. 8013).

Under 11 U.S.C. § 330 (a)(1)(A), "a bankruptcy court *may* award trustees and their attorneys 'reasonable compensation for actual, necessary services rendered.'" *Id.* (emphasis in original). Based on that statutory language, which evinces "a broad discretionary grant," the Eleventh Circuit has held that a bankruptcy court "has considerable discretion over the amounts awarded by ways of fees and expenses." *In re Hillsborough Holdings Corp.*, 127 F.3d 1398, 1404 (11th Cir. 1997); *see In re C & D Dock Works, Inc.*, 437 B.R. 443, 446 (Bankr. M.D. Fla. 2010) (stating that "[a] Bankruptcy Court has 'substantial discretion' in making a reasonableness determination" in the allocation of fees (citing *In re Ward*, 418 B.R. 667, 678 (Bankr. W.D. Pa. 2009))).

Accordingly, "an award of attorneys' fees in a bankruptcy proceeding will be reversed only if the court abused its discretion." *In re Red Carpet Corp. of Panama City Beach*, 902 F.2d 883, 890 (11th Cir. 1990); *see also Matter of*

*Sylvester*, 23 F.4th 543, 546 (5th Cir. 2022) ("We review the bankruptcy court's award of attorney's fees for abuse of discretion."); *In re Boddy*, 950 F.2d 334, 336 (6th Cir. 1991) ("We will not reverse a bankruptcy court's award of fees unless there has been an abuse of discretion."). "An abuse of discretion occurs if the judge fails to apply the proper legal standard or to follow proper procedures in making the determination, or bases an award upon findings of fact that are clearly erroneous." *In re Red Carpet Corp.*, 902 F.2d at 890.

Appellant cites *In re Club Associates*, 951 F.2d 1223 (11th Cir. 1992) for the proposition that the Bankruptcy Court's conclusions of law should be reviewed *de novo* and that findings of fact should be reviewed for clear error. But *In re Club Associates* did not involve review of a bankruptcy court's denial of fees. The specific legal issue the court was addressing in that case was whether the bankruptcy court had correctly interpreted the contractual language contained in the security deed, which was a pure question of law subject to *de novo* review. *Id.* at 1229.

Here, unlike in *In re Club Associates*, the legal issues on appeal present mixed questions of law and fact that involve "case-specific factual issues" rather than pure questions of law. *U.S. Bank Nat'l Ass'n v. Vill. at Lakeridge, LLC*, 138 S. Ct. 960, 967 (2018). The Court will therefore apply an abuse of discretion standard to the bankruptcy court's case-specific fee determinations. *See Stroud*, 2019 WL 12529177, at *2 (applying an abuse of discretion standard when the

bankruptcy court's fee determinations "were directly tied to 'an evaluation of the particular facts of th[e] case.'" (quoting *Hillsborough Holdings Corp.*, 127 F.3d at 1402)).

## IV. Discussion

Turning to the merits of Appellant's arguments, the Court will begin with a review of the relevant law. Afterwards, the Court will address Appellant's specific challenges to the bankruptcy court's fee determinations, as well as whether any of those determinations constituted an abuse of discretion.

### A. Relevant Law

Under Section 330(a)(1) of the Bankruptcy Code, the bankruptcy court may award reasonable compensation to Chapter 7 bankruptcy trustees for "actual, necessary" services and expenses, subject to the limitations contained in other provisions of the Bankruptcy Code. According to Section 330(a)(3), in determining the amount of reasonable compensation, the bankruptcy court "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors." A list of relevant factors is included in subsections (A) through (F) of Section 330(a)(3) of the statute.

The statute further provides that "[i]n determining the amount of reasonable compensation to be awarded to a trustee" in a Chapter 7 case "the court shall treat such compensation as a commission, based on section 326." *Id.* § 330(a)(7); *see In re Lally*, 612 B.R. 246, 250 (Bankr. D.N.H. 2020) (noting that

trustee compensation under 11 U.S.C. § 330(a)(7) is "a straight commission"). Section 326(a) of the Bankruptcy Code sets a statutory cap on that commission based on a share of the total money disbursed to creditors in the course of overseeing the bankruptcy estate. *See In re Howard Love Pipeline Supply Co.*, 253 B.R. 781, 786 (Bankr. E.D. Tex. 2000) (noting that "the trustee's compensation is subject to a statutory limitation based upon the amount of actual distributions made by the trustee to creditors in the case").

In addition, 11 U.S.C. § 327(a) provides that, with the bankruptcy court's approval, the trustee "may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons . . . to represent or assist the trustee in carrying out the trustee's duties" as long as those persons are disinterested and do not hold or represent an interest adverse to the estate. Given that many Chapter 7 trustees are also attorneys, the Bankruptcy Code also authorizes trustees to hire themselves to represent the estate in an attorney capacity, as long as doing so is in the best interest of the estate. *See* 11 U.S.C. § 327(d) ("The court may authorize the trustee to act as attorney or accountant for the estate if such authorization is in the best interest of the estate."). In such circumstances, 11 U.S.C. § 328(b) states, "the court may allow compensation for the trustee's services as such attorney . . . only to the extent that the trustee performed services as attorney . . . for the estate and not for performance of any of the trustee's duties that are generally performed by a trustee without the

assistance of an attorney or accountant for the estate." The trustee's duties are set out in detail in 11 U.S.C. § 704(a). Those statutory duties include, among other things, "collect[ing] and reduc[ing] to money the property of the estate for which such trustee serves," "be[ing] accountable for all property received," "investigat[ing] the financial affairs of the debtor," and "if advisable, oppos[ing] the discharge of the debtor."

Importantly, "[t]he purpose of the attorney for the trustee is not to provide assistance to the trustee in the performance of the trustee's statutory duties, **but to provide assistance with those services the trustee is unable to perform due to the lack of a license to practice law.**" *In re Hambrick*, No. 08-66265, 2012 WL 10739279, at *4 (Bankr. N.D. Ga. Apr. 10, 2012) (emphasis in original) (quoting *In re Polk*, 215 B.R. 250, 253 (Bankr.M.D.Fla.1997)). Therefore, "[w]here a trustee also serves as an attorney in the case, any hours claimed as compensation consisting of attorney's services must be reduced by any part of those hours that the trustee spent performing their duties as trustee." 9 Am. Jur. 2d Bankruptcy § 597.

As one court has observed, "[t]he benefit to retain oneself under § 327(d) . . . is not without its burdens." *In re Howard Love*, 253 B.R. at 788. Specifically,

> [W]hile the retention of the trustee in a dual capacity as attorney was primarily designed as a means by which to reduce the amount of administrative expenses incurred by a bankruptcy estate, such dual retention also creates a potential vehicle by which the statutory limitation on trustee compensation might be effectively

> circumvented, thereby actually increasing the amount of administrative expenses, if the trustee-attorney is permitted to transform what otherwise would be characterized as trustee services into legal services.

*Id.* at 787 (footnote omitted); *see also In re Lexington Hearth Lamp*, 402 B.R. at 143 ("While the 'purpose of permitting the trustee to serve as his own counsel is to reduce costs,' it also creates the potential for circumventing the limitations on trustee compensation set by Section 326(a).") (footnote omitted). Therefore, "[t]he bankruptcy court's scrutiny of professional fee applications is particularly important when, as is the case here, a trustee and/or his firm has been authorized to serve as an attorney or accountant for the estate." *In re Bird*, 577 B.R. 365, 374 (B.A.P. 10th Cir. 2017). As another Judge on this Court has observed, "a grant of carte blanche authority to a trustee's legal counsel to accrue as many fees as they may deem necessary is irreconcilable with the 'strong policy of the Bankruptcy Act that estates be administered as efficiently as possible.'" *Stroud*, 2019 WL 12529177, at *5 (quoting *Matter of First Colonial Corp. of Am.*, 544 F.2d 1291, 1299 (5th Cir. 1977)).

For all of these reasons, "[i]f the trustee's own law firm wants the estate to pay its fees for services rendered, the burden is on the firm to justify this request." *In re King*, 546 B.R. 682, 697 (Bankr. S.D. Tex. 2016). In such circumstances, the trustee-attorney must "establish that services for which compensation is sought constitute services outside the scope of the trustee's

ordinary duties." *In re Lexington Hearth Lamp*, 402 B.R. at 146 n.18. To meet that burden, the trustee applicant "must . . . present billing records with enough detail to show that the charge involves some legal service beyond the scope of the trustee's statutory duty." *In re Hambrick*, 2012 WL 10739279, at *4. Additionally, "[t]he need for the attorney must be clear from the description of the services in the application." *Id.*

One case from the bankruptcy court in this district, *In re Hambrick*, points to the following "widely accepted generalization" to distinguish between legal services and trustee's duties:

> In general, professional time is limited to those tasks performed while representing the trustee in the prosecution of contested matters and adversary proceedings, attendance at court hearings in the capacity of attorney or other professional when the trustee has an interest, the preparation of professional related applications, and the performance of other specialized services that cannot be performed practically or lawfully by the trustee without engaging the services of a professional.

*Id.* (quoting *In re Holub*, 129 B.R. 293, 296 (Bankr. M.D. Fla. 1991)). So, for example, "the professional skills of an attorney are required when there is an adversary proceeding or a contested motion," but not for the performance of any of the many tasks that fall within the trustee's ordinary statutory duties. *Id.*

As a general rule, "[o]nly when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties, and only to the extent of matters requiring legal expertise." *Id.* at *5 (quoting *In re*

*J.W. Knapp Co.*, 930 F.2d 386, 388 (4th Cir. 1991); *accord In re Lexington Hearth Lamp*, 402 B.R. at 144. "To the extent that the trustee-attorney fails to demonstrate the necessity of the legal services or the description of such services improperly lumps legal and trustee services together, attorney compensation for those services will be disallowed." *In re Howard Love*, 253 B.R. at 792.

### B. The Bankruptcy Court's Fee Determinations

The Court will review Appellant's challenges to the bankruptcy court's fee determinations in three parts. First, the Court will consider whether the bankruptcy court erroneously categorized certain legal services performed by Appellant as trustee duties for which he was only entitled to compensation in the form of a statutory commission. Second, the Court will consider the bankruptcy court's decision to deny any compensation to Appellant in connection with his opposition to the Debtor's conversion motion on the ground that those services were not beneficial to the estate. Third, the Court will consider the bankruptcy court's decision to deny compensation to Appellant in connection with the $300 application to retain the firm and the $3,202 request for preparing the firm's application for compensation.

#### 1. The Bankruptcy Court's Classification of Claimed Legal Expenses as Trustee Duties

In its order, the bankruptcy court found that a number of the services Appellant's firm billed for in connection with the sale of the Debtor's property

were actually trustee's duties subject to the Bankruptcy Code's statutory cap. Appellant argues that this determination was clear error.

By way of example, the bankruptcy court pointed to several hours the firm billed between December 2, 2019 and December 9, 2019, which was the date Appellant filed the application to retain the firm. Within that timeframe, the law firm billed $1,679.50 for 2.1 hours of the trustee's time and 2.5 hours for work performed by legal assistants. The firm's billing records indicate that during those hours, among other things, Appellant drafted a legal work action memo and reviewed various documents, including a title examination report and notice of interest in real estate for purposes of 11 U.S.C. § 549(c), and the legal assistants requested the title examination, prepared the Section 549(c) notice, and researched tax and deed records. (Bankruptcy Order at 20–21) (citing Bankr. Doc. 56 at 11). The bankruptcy court determined that all of this work fell within the scope of Appellant's trustee duties and that none of it involved any legal analysis or "unique difficulties" that would require a lawyer. From this Court's perspective, none of those determinations were clear error.

Although the legal work action memo may have involved some form of legal analysis, the burden was on Appellant to specify why that legal analysis was necessary to the case in question. Moreover, Appellant fails to explain what that legal analysis actually entailed or why it was a reasonable and necessary expense for the estate. *See* 11 U.S.C. § 330(a)(1)(A). As the bankruptcy court observed,

the subject matter of the memo was not clear from the billing records, which simply stated, "draft legal work action memo re exemptions, turnover, etc." (Bankr. Doc. 56 at 11.) Appellant has therefore failed to carry his burden to establish that he is entitled to compensation. *See In re Lexington Hearth Lamp*, 402 B.R. at 141 ("If an attorney maintains that he should be compensated for a particular service, then the attorney must describe the service and the complexity of the matter in sufficient detail so that the court can determine on the face of the fee application that the task required the use of a professional.") As other courts have emphasized, "[t]he need for an attorney's services must be apparent from the description of the services," *id.*, and "[w]here insufficient explanatory information is provided for determining the precise nature of the services rendered, the [C]ourt is compelled to determine that the services are not compensable as legal services," *in re Howard Love*, 253 B.R. at 788 (alteration in original) (quoting *U.S. v. Freeland (In re Spungen)*, 168 B.R. 373, 377 (Bankr. N.D. Ind. 1993))). Similarly, though the Section 549(c) notice is technically a formal filing, the bankruptcy court determined that preparing and filing it was simply a clerical function and Appellant had not explained why he required any legal advice to prepare or file it. The Court cannot conclude that this determination was clear error either.

After the bankruptcy court approved Appellant's application to retain the firm, the firm also billed a number of hours in connection with Appellant's efforts

to sell the Debtor's residence. The bankruptcy court carefully considered Appellant's request for compensation for these services as well.

For example, the bankruptcy court observed that Appellant's firm billed 4 hours for work that Appellant and legal assistants performed to hire a real estate broker and send a "settlement/demand" letter to the Debtor's attorney. As previously noted, the letter was essentially a demand that the Debtor pay the equivalent of the nonexempt equity in the home in order to keep the property. In reviewing these entries, the bankruptcy court determined that all of these services qualified as "trustee work" and were not compensable as legal services. Though the bankruptcy court recognized that the Appellant *could* use a lawyer to negotiate with the Debtor, the court concluded that it was not necessary to do so simply to (a) "determine what the estate should properly realize from the nonexempt equity in the residence," or (b) "communicate [the amount of] payment the Trustee would accept from the Debtor" as an alternative to selling the property. (Bankruptcy Order at 24.) For similar reasons, the bankruptcy court found that drafting the demand letter itself was not a compensable legal expense.

Regarding Appellant's work with the real estate agent, the bankruptcy court noted that "[a] chapter 7 trustee's duty to sell the estate's real estate involves the negotiation of a listing agreement with the real estate broker" whom "the trustee selects to market and sell the property." (*Id.*) The court added,

"Generally, discussions and negotiations concerning the terms of a listing agreement are trustee work." (*Id.* at 25.) Accordingly, none of these tasks were compensable as legal services.

Finally, the bankruptcy court found that the application to employ the real estate broker was simply a "routine application" that did not entail any legal work. The bankruptcy court opined, "a chapter 7 trustee is an officer of the bankruptcy court. Surely an officer of the court may file routine papers necessary for the proper performance of the trustee's statutory duties." (*Id.* at 30) (footnote omitted). The bankruptcy court therefore concluded, "a chapter 7 trustee may perform the statutory duty of filing an application to retain a broker to sell the estate's real property without the necessity of using a lawyer." (*Id.* at 31) (footnote omitted). As for the special stipulations contained in the proposed listing agreement, the bankruptcy court explained, "The question is whether the special stipulations presented unique difficulties that required legal services in this case." (*Id.* at 25.) The court continued, "[a]s in this case, 'special' stipulations that are necessary in a listing agreement for a trustee's sale of estate property are not special at all. They are routine in the course of any case involving the sale of a residence." (*Id.* at 26.) Therefore, "[e]ven if he were not a lawyer, the Trustee knew from previous cases that the standard bankruptcy terms should be included in the listing agreement as a matter of course and how to do it." (*Id.*

at 27.) Once again, from this Court's perspective, none of those determinations were clearly erroneous.

In his brief on appeal, Appellant argues that his decision to retain counsel for each of the tasks described above was protected by the business judgment rule, and that doing so was reasonably necessary to prevent professional negligence and any breaches of the duty of care. Appellant therefore argues, "there are sound business reasons that justified Trustee's employment of counsel in this matter." (Appellant's Br., Doc. 15 at 59.)

On this point, the bankruptcy court acknowledged that even when the trustee does not *have* to use a lawyer, the trustee may nevertheless be entitled to compensation for legal services if "the Trustee and his law firm have established that the circumstances of this case justified the use of a lawyer, in the exercise of the Trustee's reasonable business judgment." (Bankruptcy Order at 32.) At the same time, as the bankruptcy court noted, "when the trustee and the lawyer are the same person, § 328(b) requires that the trustee-attorney justify separate compensation for legal services by showing the existence of 'unique circumstances' or issues involving 'unique difficulties' that require legal work." (*Id.*) In other words, the business judgment rule does not override the restrictions imposed by Section 328(b) of the Bankruptcy Code, and when a trustee-attorney fails to identify any unique difficulties that would justify retaining counsel in the performance of a trustee's ordinary statutory duties, the

trustee's request to be compensated for those services in a legal capacity must be denied. Simply put, "[t]here is no question that a trustee may serve as the attorney for the trustee under Section 327(d), but the attorney for the trustee cannot be compensated for administering the estate under Section 704." *In re Lexington Hearth Lamp*, 402 B.R. at 141–42 (internal citations omitted). "The attorney for a Chapter 7 trustee may not be compensated for services that the Bankruptcy Code requires the trustee to perform." *Id.* at 142.

If attorneys could be compensated for trustee duties, "[a] trustee could delegate most or all of her duties to an attorney or accountant and still receive her § 326(a) commission, while the attorney or accountant would also receive their hourly rate for time spent performing the trustee's duties." *Matter of Sylvester*, 23 F.4th at 548. But based on the limitations set forth in 11 U.S.C. § 328(b), "a trustee, as a sophisticated person, cannot conveniently delegate his statutory duties to his own law firm to perform and thereafter allow this firm to charge the estate," *In re King*, 546 B.R. at 697; "he can only obtain legal services chargeable to the estate where 'unique difficulties' arise" and "resolving such difficulties" would require "legal expertise," *id.*; *In re Hambrick*, 2012 WL 10739279, at *5. Although there are many tasks that fall within a Chapter 7 trustee's duties that theoretically *could* be performed by a lawyer, "[t]here is a vast breadth of trustee services, the compensation for which has been and will continue to be subject to the § 326(a) statutory limitation." *In re Howard Love*, 253 B.R. at 791; *see, e.g.*

*Matter of Shades of Beauty, Inc.*, 95 B.R. 17, 18 (E.D.N.Y. 1988) (finding that"[e]xamining debtor's books, gaining entrance to its leased premises, selling its secured property, auctioning its remaining property, and collecting on its accounts receivable are all services normally to be performed by the trustee, or at least are incidental to his statutory obligations"); *In re King*, 546 B.R. at 699–700 (finding that tasks such as "Investigation of estate property" and "Selling or disposing of assets" are "presumptively non-compensable"); *In re Lexington Hearth Lamp*, 402 B.R. at 144–45 (finding that tasks such as "Reviewing the Debtor's Records," "Investigating Estate Property," and "Selling or Disposing of Estate Assets" were not compensable); *In re Lowery*, 215 B.R. 140, 141–42 (Bankr. N.D. Ohio 1997) (finding that services such as "recover[ing] an asset, all that accompanies that effort, including the time in investigating, letter writing, phone calling and the hiring of other professionals, such as appraisers or real estate brokers . . . . surely fall within the ambit of § 704, the Code's defined duties of the trustee").

Relying on *In re Lally*, 612 B.R. 246 (Bankr. D.N.H. 2020), Appellant emphasizes that allowing trustees who are lawyers to retain themselves and their law firms to perform legal work is expressly permitted by 11 U.S.C. § 327, and that this is a "widely accepted practice." Granted, the court in *In re Lally* did acknowledge that "[a]llowing the chapter 7 trustee to serve as trustee's counsel benefits the bankruptcy estate when it results in more efficient administration

and reduced costs." *Id.* at 255. But the court also noted that "[i]t is the applicant who bears the burden to demonstrate entitlement to requested fees." *Id.* at 256. And the court also stressed that "the award of a chapter 7 trustee commission is a separate and distinct analysis from the Court's award of compensation to the trustee's counsel," and that "an attorney for a chapter 7 trustee is not entitled to professional compensation for performing non-delegable duties of the trustee." *Id.* at 255. In short, nothing about the court's decision in *In re Lally* conflicts with the foregoing analysis.

Appellant also argues that the bankruptcy court's order effectively directs non-attorneys to engage in the unauthorized practice of law. But as the bankruptcy court noted, the activities Appellant and his firm engaged in, such as document review and the filing of "routine papers" are not the sort of tasks for which an attorney would be *required*, even if an attorney theoretically could perform any of these tasks. Moreover, as the bankruptcy court noted, "chapter 7 trustees regularly sell residential real estate in a consumer bankruptcy case," and nothing in the records suggests that the tasks described above entailed "any unique or complex legal issues." (Bankruptcy Order at 26–27.)

Significantly, Appellant did not mention any of these tasks for which he now claims he required a lawyer within his application to hire the firm. In that application, Appellant indicated that counsel would be needed for tasks such as "objection[s] to any (i) motion to convert Case or (ii) motion to dismiss Case,"

"preparation of demand letters," "settlement negotiations," "legal research," and preparing other substantive legal filings. (Bankr. Doc. 20 at 2.) Although the application did include language stating that counsel may be needed for "other necessary services," (*id.*), for the reasons already discussed, Appellant has not established that the purported legal services for which he now seeks fees were actually "necessary."

In short, nothing about the bankruptcy court's decision to deny compensation for services that it classified as trustee duties was clearly erroneous. The Court therefore affirms the Bankruptcy Court order in that regard.

#### 2. The Bankruptcy Court's Denial of Fees in Connection with the Trustee's Opposition to the Debtor's Conversion Motion

Unlike the services discussed above, the bankruptcy court appeared to agree with Appellant that the work Appellant performed in opposing the Debtor's conversion motion would require a lawyer. Indeed, this was one of the tasks for which Appellant expressly stated that he would require a lawyer in his application to retain the firm. *See* (*id.*) (stating that "Counsel will be needed for any . . . objection to any . . . motion to convert Case"). Nevertheless, the bankruptcy court denied all of Appellant's request for compensation in connection with that opposition because it determined that those services were not necessary or

beneficial to the estate. Once again, Appellant argues that this determination was clear error.

Though the bankruptcy court agreed with Appellant that the decision to oppose the conversion motion should not be evaluated from the perspective of hindsight, the court still found that the lack of a benefit to the estate in doing so was apparent at the time the opposition was filed. In the bankruptcy court's view, even then, it was apparent that the conversion would have only one of two consequences: either the Debtor would follow through on a repayment plan, or he would fail to do so and the case would be reconverted to a Chapter 7 case. The bankruptcy court emphasized that 11 U.S.C. § 1307(c) expressly provides that a Chapter 13 case may be converted back to a Chapter 7 case based on "material default by the debtor with respect to a term of a confirmed plan." So, in the bankruptcy court's view, either way there would be no harm to the creditors. And to the extent Appellant argued that the conversion would result in a delay in payment to the creditors, the bankruptcy court found that the delay would not prejudice the creditors because they would still be paid in full in the end.

The bankruptcy court also considered Appellant's argument that the conversion motion should be denied because the Debtor acted in bad faith. Appellant argues, as he argued below, that just like in *Marrama v. Citizens Bank of Massachusetts,* 549 U.S. 365 (2007), the Debtor in this case acted in bad faith — and his conversion motion should have been denied — because he

misrepresented the value of his assets and attempted to thwart the sale of his home. However, like the bankruptcy court, this Court finds the facts in *Marrama* distinguishable.

In *Marrama*, the debtor not only undervalued the property in question, but he also transferred the entire property into a trust in an effort to hide it from creditors — and he listed the value of the property owned by the trust as $0. 549 U.S. at 368. As a consequence, the allegations of bad faith in *Marrama* were not based solely on the fact that the debtor wanted to keep his home; instead, they were based "primarily on Marrama's attempt to conceal the Maine property from his Creditors." *Id.* at 369. Moreover, as the Supreme Court explained in *Marrama*, "[t]he class of honest but unfortunate debtors who do possess an absolute right to convert their cases from Chapter 7 to Chapter 13 includes the vast majority of the hundreds of thousands of individuals who file Chapter 7 petitions each year." *Id.* at 374. And the Supreme Court emphasized that for the bad faith exception to apply "the debtor's conduct must, in fact, be atypical." *Id.* at 375 n.11.

As the bankruptcy court explained in its order, "[t]he obvious and undisputed facts known at the time the Debtor sought conversion do not come close to showing that this case is an 'atypical' or 'extraordinary' case in which denial of conversion could be appropriate under *Marrama*." (Bankruptcy Order

at 43.) The bankruptcy court therefore concluded that Appellant "could not possibly have prevailed on this issue." (*Id.*)

Appellant also cites *In re Brown*, 293 B.R. 865 (Bankr. W.D. Mich. 2003), but like *Marrama*, *In re Brown* is distinguishable. The relevant facts in that case were described by the court as follows:

> Since seeking bankruptcy protection, the Debtor has made almost constant attempts to avoid the consequences of chapter 7 bankruptcy—namely, the sale of the Okemos property. The Debtor has significantly undervalued the Okemos property on his bankruptcy schedules; he had repeatedly failed to appear and testify at the required § 341 meetings (eventually doing so only in the shadow of threatened contempt proceedings); and he has failed to timely pay his filing fee. When these tactics failed, and as the sale of the Okemos property became more imminent, the Debtor consistently refused to grant the Trustee, his realtor, and the prospective purchaser access to the Okemos property. These refusals continued notwithstanding court orders to the contrary.

*In re Brown*, 293 B.R. at 871. Based on these facts, the court in *In re Brown* concluded that there was "sufficient indicia of bad faith and abuses of the bankruptcy process to justify denial of [the debtor's] motion to convert" because "the Debtor's motion to convert [was] simply the Debtor's latest attempt to manipulate the bankruptcy process and prevent the sale of the Okemos property." *Id.* at 870–71.

Admittedly, both *Marrama* and *In re Brown* involved situations in which the debtor sought to avoid the sale of his property. But that alone is not sufficient evidence of bad faith. As the bankruptcy court observed, "Chapter 13's very

purpose is to give the debtor an opportunity to keep property, especially a home." (Bankruptcy Order at 46.) Accordingly, the Court finds no clear error with the bankruptcy court's assessment of Appellant's bad faith objection insofar as it informs Appellant's entitlement to fees.

Appellant also argues that, at the time, it appeared to him that the conversion would be prejudicial to creditors and that he therefore had an obligation to object. Appellant relies on the case *In re Zimmer*, 623 B.R. 151, 163 (Bankr. W.D. Pa. 2020), where the court stated, "[A] bankruptcy trustee is a fiduciary for creditors and, consistent with that duty, the trustee has an obligation to object to a motion to dismiss if dismissal of the case [is] not in the best interest of creditors." Although the court in *In re Zimmer* addressed an objection to a motion to dismiss a bankruptcy case rather than a conversion motion, Appellant argues that the same logic applies. Thus, in Appellant's view, he had an obligation to object to the Debtor's motion on the ground that the motion was not feasible and would ultimately be harmful to the Debtor's creditors.

The bankruptcy court rejected these arguments on the ground that the Debtor's Chapter 7 schedules — which showed that he had no disposable income — were not a reliable means of assessing the Debtor's ability to propose a repayment plan. The bankruptcy court also emphasized that "circumstances can change," and "Debtors may 'tighten their Belts' by reducing expenses, surrender

an unnecessary vehicle, or find other sources of income such as a second job or charitable gifts from church or family, or some combination." (Bankruptcy Order at 45.) And the bankruptcy court suggested that if Appellant had concerns about the feasibility of conversion he could have simply filed a short response to communicate his concerns — without including any in depth analysis that would require a lawyer[4] — or simply communicated his concerns to the Chapter 13 trustee.

In his brief on appeal, Appellant contends that the decision to file the objection to the conversion motion was protected by the business judgment rule. Specifically, he argues,

> When a debtor's sworn statements of income and expenses (filed with a bankruptcy petition or soon thereafter) show that the debtor has no "disposable income" (i.e. income after expenses) needed to confirm a plan and that the debtor has not budgeted for any upkeep or maintenance on his or her residence, it is the Chapter 7 trustee's duty to object to conversion.

(Appellant's Br., Doc. 15 at 21–22.) He therefore argues, "The Bankruptcy Court erred in completely denying Appellants' requests to be compensated for objecting to conversion." (*Id.* at 22.)

Although the Court has some concerns about the amount of time Appellant spent on the opposition and how much he seeks to charge the estate in

[4] As one court has put it, "[t]he preparation of a routine objection . . . that requires no legal analysis is a trustee duty," but "[i]f a legal analysis is necessary to the objection, then it is a service that must be provided by an attorney." *In re Lexington Hearth Lamp*, 402 B.R. at 145.

connection therewith, the Court agrees that Appellant's decision to use a lawyer for that purpose fell within the scope of the business judgment rule. *See In re Lexington Hearth Lamp*, 402 B.R. at 146 (finding that "a determination of if, when, and how a response should be made requires legal acumen that few laymen possess," and that "[u]nless it is clear from the context of such an entry that no legal skill or knowledge is involved, this Court will allow a Chapter 7 trustee-attorney to receive compensation for such services in his capacity as an attorney.").

The case *Arnall Golden Gregory LLP v. Stroud*, No. 1:18-cv-3755, 2019 WL 12529177 (N.D. GA. Jan. 28, 2019) is instructive. Notably, that case involved a request by the same trustee and the same law firm for $6,000 in fees in connection with legal work performed for opposing a conversion motion. The court ultimately upheld the bankruptcy judge in that case's decision to reduce the claimed fees from $6,000 to $3,000. In so holding, the court found that the bankruptcy judge's reduction of the fees was not clearly erroneous because the bankruptcy judge "provided a reasoned explanation as to why she determined that not all $6,000 in fees spent opposing the Motion to Reconvert were actual and necessary." *Stroud*, 2019 WL 12529177 at *4. In the underlying order in that case, though the bankruptcy court had determined that the trustee's opposition "was not wholly unfounded," it still questioned "why the Trustee needed . . . to incur so much time and legal expense in opposing the motion." *In re Stroud*, No.

15-74063, 2018 WL 3533347, at *5 (Bankr. N.D. Ga. July 20, 2018). The bankruptcy court therefore determined that a reduction in the amount of fees was appropriate. *Id.*

The same is true in this case. Though the bankruptcy court here may have disagreed with Appellant's decision to file the opposition, the opposition "was not wholly unfounded" given that — at the time Appellant filed the opposition — the Debtor did not have any disposable income through which he could establish a repayment plan to compensate creditors.[5] And though, as the bankruptcy court in this case observed, Appellant likely could have just filed a simple opposition in his capacity as a trustee, the decision to do so in his capacity as a lawyer appears to fall within the scope of the business judgment rule, as it apparently did in *Stroud*. Further, the negotiations Appellant engaged in with the Debtor's counsel ultimately culminated in the consent order granting the conversion motion subject to several contingencies. Appellant drafted the consent order in his capacity as a lawyer, and the terms of that consent order appear to have provided at least some benefit to the estate.

Under the circumstances, the Court finds that the bankruptcy court's decision to award no compensation whatsoever in connection with that entire process was an abuse of discretion. That said, like the bankruptcy judge in

[5] The Court agrees with the bankruptcy court that an apparent lack of disposable income is not in and of itself grounds to deny a request for conversion. However, it is one factor that a court could consider in the bad faith calculus when addressing a debtor's qualified right to convert under *Marrama*.

*Stroud*, this Court questions why the Appellant needed to incur so much time and expense in opposing the conversion motion. Just like in *Stroud*, a lower award than the requested $6,805.20 for opposing the conversion motion seems appropriate here.[6]

Because the bankruptcy court declined to "examine the specific services rendered in connection with opposition to conversion," (Bankruptcy Order at 49), the Court will remand the case to the bankruptcy court to consider that question in the first instance.[7] The bankruptcy court is better positioned to consider that question than this Court because "the bankruptcy court is more familiar with the actual services performed and 'has a far better means of knowing what is just and reasonable than an appellate court can have.'" *Matter of Shades of Beauty*, 95 B.R. at 18 (quoting *Matter of Lawler*, 807 F.2d 1207, 1211 (5th Cir. 1987)).

---

[6] As previously noted, after the hearing on the fee application Appellant offered to voluntarily reduce his claimed fees from $15,000 to $10,000. On the current record, it is not clear how much of that reduction would have come from the fees Appellant sought in connection with opposing the conversion motion.

[7] In a footnote, the bankruptcy court speculated that the time Appellant spent negotiating with the Debtor's counsel about a settlement may not be compensable on the ground that it fell within the scope of Appellant's trustee duties. (Bankruptcy Order at 49–50 n.89.) However, the decision to utilize a lawyer for that purpose likely falls within the scope of the business judgment rule; especially considering that the bankruptcy court expressly authorized Appellant to retain counsel for precisely that purpose. *See* (Bankr. Doc. 20) (stating that "Counsel will be needed for any . . . settlement negotiations"). The bankruptcy court also did not address the work Appellant performed in drafting the consent order, which would likely require a lawyer, and therefore would fall outside the scope of his trustee duties.

### 3. The Bankruptcy Court's Denial of Compensation in Connection with the Application to Retain the Firm and the Firm's Fee Application

Appellant also claimed $300 in fees for the application to retain the firm and $3,202 for the fee application for the firm's services. In the Bankruptcy Order, the bankruptcy court determined that neither of these expenditures was compensable because the firm was not entitled to collect any fees in the first place. As the bankruptcy court put it, the firm "is not entitled to fees for seeking compensation that is not allowed."[8] (Bankruptcy Order at 51.) Appellant argues that this holding was clear error.

Because the Court finds that at least some of the legal work Appellant and the firm performed in opposing the conversion motion was beneficial to the estate, the court finds that it was clear error for the bankruptcy court to deny Appellant any compensation for preparing the application to retain the firm or for preparing the fee application, at least to the extent the fee application sought compensation for those specific services. On remand, the bankruptcy court should consider the appropriate amount of compensation for the time Appellant and his firm spent preparing the fee application to the extent doing so was necessary to recover expenses incurred in connection with the Debtor's conversion motion. Other cases from the bankruptcy court in this district suggest

[8] The bankruptcy court did allow compensation for preparing the fee application insofar as it was necessary for reimbursement of expenses, but the court classified those expenses as trustee expenses rather than legal expenses. (Bankruptcy Order at 50–51.)

that in a straightforward matter such as this one, which involved a relatively small bankruptcy estate, an experienced attorney should normally be able to complete a routine fee application in an hour or two at most, absent unusual circumstances.[9]

## V. Conclusion

For the forgoing reasons, the Bankruptcy Order is **AFFIRMED IN PART** and **REVERSED IN PART**. The matter is **REMANDED** to the bankruptcy court for further proceedings consistent with this Order. On remand, the bankruptcy court should determine how much Appellant and his firm should be compensated for services rendered in connection with the opposition to the Debtor's conversion motion up through Appellant's filing of the consent order granting the conversion, the application to retain the law firm, and preparation of the fee application.

---

[9] In the appendix to the Bankruptcy Order, the bankruptcy court included a list of decisions from the bankruptcy court in this district involving fee determinations in matters where the trustee had opposed a debtor's conversion motion. *See* (Bankruptcy Order App. E). A review of the fee applications in these cases suggests that Appellant should be able to complete a routine fee application in this case without billing multiple hours to the estate. *See, e.g.*, Counsel for Trustee Application for Approval of Fees and Expenses as Administrative Expenses, *In re Mark Douglas Stowers*, No. 20-61696 (Bankr. N.D. Ga. July 29, 2020), Doc. 46 (billing 1 hour for a total of $410 to prepare fee application in matter involving $4,756 request for legal fees); Application for Compensation and Request for Administrative Expense, *In re Crick Waylon Fincher*, No. 20-40416 (Bankr. N.D. Ga. July 24, 2020), Doc. 35 (billing 1.2 hours for preparing fee application in matter involving $2,205 request for legal fees); First Interim Application of Arnall Golden Gregory LLP for Allowance of Compensation and Reimbursement of Expenses as Counsel for Trustee, *In re Wahida Latif*, No. 18-68265 (Bankr. N.D. Ga. July 12, 2019), Doc. 56 (billing approximately $732 for preparing fee application in matter involving $15,000 request for legal fees).

It is **SO ORDERED** this 11th day of March, 2022.

**AMY TOTENBERG**
**UNITED STATES DISTRICT JUDGE**